## BROGDEN v. SLATER.
### No. 2364.

Court of Customs and Patent Appeals.
May 28, 1930.

Ray F. Steward, Clarence O. McKay, and Melvin W. Sandmeyer, all of Washington, D. C., for appellant.

Charles M. Thomas and Francis D. Thomas, both of Washington, D. C., for appellee.

Before GRAHAM, Presiding Judge, and BLAND, HATFIELD, GARRETT, and LENROOT, Associate Judges.

LENROOT, Associate Judge.

This is an appeal from a decision of the Board of Appeals of the Patent Office in an interference proceeding. The invention involved is a process of preparing fresh fruit for market, comprising subjecting the fruit to the action of a solution of sodium hypochlorite to prevent decay.

There are six counts comprising the issue, which read as follows:

"1. A process which comprises the step of bringing the entire exterior surface of fruit into a contact with a non-poisonous disinfectant solution containing a hypochlorite of an alkali-forming metal.

"2. The process which comprises the step of bringing citrus fruit into contact with a non-poisonous disinfectant solution containing a hypochlorite of an alkali metal.

"3. The process which comprises the step of bringing the entire exterior surface of citrus fruit into contact with a non-poisonous disinfectant solution containing a hypochlorite of an alkali forming metal.

"4. A process which comprises the steps of bringing fruit into contact with a non-poisonous disinfectant solution containing a hypochlorite of alkali-forming metal, and then coating the fruit with a thin coating of protective material.

"5. A process of treating citrus fruit which comprises applying thereto a thin coating of a solution containing a hypochlorite of an alkali-forming metal, and thereafter applying to such fruit an extremely thin coating of a molten soft waxy material.

"6. In the preparation of fresh fruit for the market, the process which comprises subjecting fruit to the action of an alkaline solution containing sodium hypochlorite."

Appellant's application was filed on June 19, 1924. The application of appellee was filed on February 21, 1922. Appellant is, therefore, the junior party. Appellant took no testimony, and appellee relied upon his earlier filing date.

All of the tribunals of the Patent Office concurred in awarding priority of invention to appellee.

In his brief and upon the oral argument before us, appellant contended: (1) That, if the counts are broadly interpreted they are not patentable; (2) that, if construed in such a manner as to be patentable, they are not supported by appellee's application; (3) that the process disclosed in appellee's application, as originally filed, is inoperative and incapable of producing any useful result in treating fresh fruit for decay prevention.

All of the counts in issue originated in appellee's application, and it is well established that the meaning given to the counts, if there be any ambiguity, must be that disclosed in the specification of the party first to make the claim. Seymour v. Molyneux, 49 App. D. C. 216, 263 F. 468.

Upon the first of appellant's contentions, that, if the counts are broadly interpreted, they are not patentable, we would observe that the general rule is that this is a question that cannot be raised in an interference proceeding. Gowen v. Hendry & King (Cust. & Pat. App.) 37 F.(2d) 426; Lynch v. Headley et al., 52 App. D. C. 269, 285 F. 1003.

Appellant asserts, however, that this rule is not applicable here. In his brief he states his position as follows:

"While we recognize that, broadly, the question of patentability will not ordinarily be reviewed by this Court in a priority contest, we believe that the interpretation expressly placed upon the counts by the Board of Examiners-in-Chief (Suppl. Record, page 3), in order to justify holding them patentable over the prior art necessitates a consideration of the prior art here because of the bearing it necessarily has on the question of Slater's right to make the counts."

The record shows that the claims of appellee's application, including those in issue, were at one time disallowed, but, upon reconsideration, after the filing of certain affidavits upon the subject of successful commercial operation, this decision was reversed, and the claims in the application, with certain exceptions not material here, were held to be patentable.

Thereafter this interference was declared, whereupon, after the filing of preliminary statements by both parties, appellant moved to dissolve the interference upon the ground, among others, that each of the counts, if construed broadly enough to read upon both interfering application disclosures, is unpatentable over the prior art. This motion was granted by the Law Examiner, and appeal therefrom was taken to the Examiners in Chief. The Examiners in Chief reversed the decision of the Law Examiner and held the claims to be patentable. In their decision the Examiners in Chief said:

"The issue claims are taken from the Slater application in which they were allowed upon appeal by this Board. They had been rejected on certain references showing that it was old to treat fruit by means of certain chemicals and that it was old to treat certain things with hypochlorite. It was the opinion of this Board that the use of hypochlorite of an alkali-forming metal in the treatment of fresh fruits for preventing mold was not inventive in view of the art of record. But appellant had made some assertions as to the successful use of his invention commercially, and it was suggested that if a verified showing of such successful commercial use were made this might be deemed sufficient to raise a doubt as to the obviousness of the use of the hypochlorite as a preventive of fruit decay and that the claims might be found allowable. Acting on this suggestion, appellant furnished a number of affidavits which it was considered furnished the necessary showing of practical utility, and the claims were allowed. They were thereupon suggested to the party Brogden, and this interference was declared."

While later in the decision the Examiners in Chief refer to one special form of fruit decay, blue mold, there is nothing in the decision which warrants the conclusion that they held that the claims in issue were construed to be limited to this form of decay.

Appellant moved for a rehearing of appellee's appeal to the Examiners in Chief, decided as aforesaid, which motion was denied in a written decision which appellant relies upon principally to support his contention that, in finding patentability, the claims were narrowly construed by the Examiners in Chief. We do not so read the decision upon this motion. It is true that the Examiners in Chief made the following statement: "The issue counts are for a process of treating fruit which the Board and other tribunals of the office have held to be for the purpose of preventing the development of blue mold," but we do not think that the Board of Examiners in Chief intended by this language to read a limitation in the claims, confining them to a process for the prevention of blue mold.

However this may be, in the decision of the Board of Appeals, from which this appeal is taken, the Board makes the following statement:

"Slater's application is not restricted to the prevention of any one kind of decay of fruit and if the process will reduce putrefactive decay Slater has a right to make the counts. The party Brogden had the opportunity to take testimony to show the inoperativeness of the Slater process but he has failed to take such testimony.

"We see no reason for reversing the former decisions of the Examiners-in-Chief holding that the counts are patentable or for reversing the decision of the Law Examiner in holding that Slater has a right to make the counts, since no testimony has been offered by the party Brogden to show that the decision of the Law Examiner was wrong."

From the above it is clear that the Board of Appeals broadly interpreted the counts here in issue and found them to be patentable.

This being true, we have no occasion to inquire further as to the contention of appellant that the counts are not patentable if broadly construed, for the general rule that this question cannot be raised in an interference proceeding is clearly applicable. Had the record disclosed that the claims were narrowly construed and that the Board of Appeals had held that, if broadly construed, they would not be patentable, a different question would be presented, which it is unnecessary for us to consider here.

The next question is, Are the counts in issue supported by the disclosure in appellee's application? We do not understand that appellant seriously contends that, if the counts are broadly interpreted, they are not supported by appellee's disclosure. It is sufficient to say that the counts broadly construed are clearly supported by the disclosure in appellee's application.

Finally, appellant contends that appellee has no right to make the claims because his process is inoperative and without utility.

Upon this subject many affidavits are found in the record. All of the Patent Office tribunals have found that the process disclosed in appellee's application is operative. The findings of fact of the tribunals of the Patent Office, when unanimous, will not be disturbed by this court, unless manifestly wrong. Beidler v. Caps (Cust. & Pat. App.) 36 F.(2d) 122, and cases cited.

We find nothing in the record warranting a reversal of the finding by the Patent Office tribunals that the process disclosed by appellee is operative.

After the record, as originally certified, had been printed, both parties filed motions suggesting a diminution of the record by adding thereto certain documents requested by the appellant and certain documents requested by the appellee. Both motions were allowed; the court ordering that the costs for printing the additional matter requested be taxed on final decision. In view of the reasons of appeal filed by appellant, as required by statute, we think all of the documents included in appellee's motion for diminution of the record should have been originally certified by the Commissioner and printed as a part of the original record. Therefore it is the order of this court that the costs of printing the supplement to the record be assessed against appellant.

The decision of the Board of Appeals is affirmed.

Affirmed.